**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ZEBO SOLAR, LLC and CASABLANCA SOLAR PARTNERS I, LLC, | ) | |
| Plaintiffs, | ) | No. 1:25-cv-12965-JEK |
| v. | ) | |
| LOUTH CALLAN RENEWABLES LLC, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO SEVER AND DISMISS PLAINTIFF CASABLANCA SOLAR PARTNERS I, LLC**

**KOBICK, J.**

Plaintiffs Zebo Solar, LLC and Casablanca Solar Partners I, LLC filed this lawsuit seeking damages arising out of their respective solar investment projects with defendant Louth Callan Renewables LLC. Zebo alleges that its investment in a solar panel project in Jamaica Plain, Massachusetts has produced insufficient returns, and it asserts claims for breach of contract, negligent and intentional misrepresentation, and violations of M.G.L. c. 93A. Casablanca contends that its investment project in Billerica, Massachusetts never got off the ground, and it brings claims for breach of contract, negligent and intentional misrepresentation, and conversion. Pending before the Court is Louth Callan's motion to sever Casablanca and its claims under Federal Rules of Civil Procedure 20 and 21. That motion will be granted because the plaintiffs' respective claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences and do not share common issues of law or fact.

## BACKGROUND

The following facts are drawn from the complaint and assumed to be true. *See Corker v. ezCater, Inc.*, No. 24-cv-12888-DJC, 2025 WL 2076698, at *2 (D. Mass. July 23, 2025).

Plaintiff Zebo Solar, LLC is a Massachusetts-based limited liability company whose sole member and manager, David Zion, resides in Massachusetts. ECF 17, ¶ 1. Based on the citizenship of its members, plaintiff Casablanca Solar Partners I, LLC is a citizen of Massachusetts, Florida, and California. *Id.* ¶¶ 2-4. Zion is also the manager and a member of Casablanca. *Id.* ¶ 2. Defendant Louth Callan Renewables LLC, a Connecticut-based solar construction and investment firm, is a citizen of Connecticut. ECF 15-1.

### I. <u>The Jamaica Plain Project.</u>

In December 2019, Louth Callan executed a "Sales & Service Agreement to Design, Instal[l], and Manage a Photovoltaic System" (the "Jamaica Plain Sales and Service Agreement") with non-party Daughters of St. Paul Inc. (the "Daughters"), a Massachusetts nonprofit. ECF 1-1, ¶ 11. That agreement obligated Louth Callan to "design, procure and install a 528.4kW_DC rooftop solar photovoltaic system" on the Daughters' buildings located at 50 Saint Paul's Avenue in Jamaica Plain, Massachusetts (the "Jamaica Plain Project"). *Id.* ¶ 12 (quotation marks omitted). In April 2021, Louth Callan and the Daughters amended the Jamaica Plain Sales and Service Agreement. *Id.* ¶ 13. Among other things, that amendment decreased the project size to 464.1 kW_DC, with a corresponding reduction in cost. *Id.* ¶¶ 13, 14. The amendment, together with the original Jamaica Plain Sales and Service Agreement and two other attachments,[1] collectively constitute the operative agreement between Louth Callan and the Daughters and their "affiliates,

---

[1] A "Solar/Roof Proposal Summary" and an "Operations and Maintenance" document. ECF 1-1, ¶ 15.

successors and assigns." *Id.* ¶ 16 (quotation marks omitted). That revised agreement—hereinafter the "Jamaica Plain Agreement"—projects that the Jamaica Plain Project will produce $2,904,184 in income over thirty years. *Id.* ¶ 17. It further states that Louth Callan "is aware that upon [its] completion of the [Jamaica Plain Project], it is the [Daughters'] present intention to convey all of its right[s], title and interest in the project to Zebo." *Id.* ¶ 20.

On September 30, 2021, the Daughters assigned the Jamaica Plain Agreement—and all its rights and obligations therein—to Zebo. *Id.* ¶¶ 21-22. In connection with that assignment, Zebo and the Daughters executed several ancillary agreements, including a promissory note in the amount of $1,900,000. *Id.* ¶ 23. That note has a fixed interest rate of 1.5% per year and obligates Zebo to pay the Daughters $9,168.36 per month for twenty years, beginning December 1, 2021 and ending November 30, 2041. *Id.* ¶ 24.

Zebo's decision to invest in the Jamaica Plain Project was driven by representations made by Louth Callan about the project's anticipated performance. *Id.* ¶¶ 32-34. In addition to the projections outlined in the Jamaica Plain Agreement, Louth Callan provided Zebo with more detailed revenue projections predicting monthly earnings averaging $10,974 per month in year one and decreasing over time to an average of $10,058 per month by year twenty. *Id.* ¶ 31. On several occasions, Louth Callan represented to Zebo that those projections "were conservative, and that the Jamaica Plain Project would outperform them." *Id.* ¶ 32. In deciding to invest in the project by committing to $9,168.36 monthly payments to the Daughters, Zebo relied on those projections, reasoning that there would be "sufficient income to cover its obligation." *Id.* ¶¶ 30, 35. According to Zebo, Louth Callan knew "at all relevant times" that its revenue projections "were the foundation for Zebo's decision to invest in the Jamaica Plain Project and enter into its arrangements with the Daughters." *Id.* ¶ 38.

From August 2022 through September 2025, the Jamaica Plain Project produced total revenues of $236,299.88, an amount about $185,000 below Louth Callan's projections for that period. *Id.* ¶ 44. The average monthly revenue from that period was $6,058, approximately $4,900 less than what Louth Callan projected and well below Zebo's obligation to the Daughters. *Id.* ¶¶ 42-43. As a result, Zebo has suffered "substantial and foreseeable harm" and has been unable to meet its financial obligations to the Daughters. *Id.* ¶ 42.

Louth Callan attributed the revenue shortfall to "equipment problems and/or a lightning strike," even though the Jamaica Plain Project is equipped with a lightning strike prevention system. *Id.* ¶¶ 45-46. Zebo disputes the occurrence of a lightning strike and insists that it was, in any event, Louth Callan's obligation to "properly instal[l]" and "maintain" the Jamaica Plain Project. *Id.* ¶¶ 46-50. On May 30, 2025, Louth Callan informed Zebo that certain repairs were necessary and would cost $23,308.80. *Id.* ¶ 52. Believing the costs to be "inflated" and Louth Callan's responsibility, Zebo refused to pay. *Id.* ¶ 53. Louth Callan, in turn, "refused to pay for . . . [or] conduct" the repairs. *Id.* ¶ 54. On August 8, 2025, Zebo authorized Louth Callan to conduct the repairs and stated that it would "pay for the repairs once completed, reserving all rights." *Id.* ¶ 55. It further requested that Louth Callan provide certain information about the Jamaica Plain Project in accordance with the Jamaica Plain Agreement. *Id.* ¶ 56. As of September 2025, Louth Callan had not completed the repairs or provided the requested information. *Id.* ¶ 57.

## II. <u>The Billerica Project.</u>

On October 21, 2021, Casablanca and Louth Callan entered into a "Solar Power Development Agreement" (the "Billerica Agreement") concerning the development of a "5 MW solar photovoltaic power plant with a 2 MWh battery storage on-site" at a property in Billerica, Massachusetts (the "Billerica Project"). *Id.* ¶ 61 (quotation marks omitted). That agreement

required Louth Callan to, among other things, provide "Pre-Development Services," including managing "the permitting, development, and design of the Billerica Project." *Id.* ¶¶ 68-69. At the time, Louth Callan knew that Casablanca intended to lease the land upon which the Billerica Project was to be built from the Daughters. *Id.* ¶ 72. Following Louth Callan's representation that "it anticipated all required approvals needed for the Billerica Project would be obtained by early 2023," Casablanca paid Louth Callan the $250,000 "Milestone 1" payment per the Billerica Agreement in January 2022. *Id.* ¶¶ 64-65.

As of September 2025, Louth Callan had not "done anything substantial to obtain or expedite" the required approvals for the Billerica Project and had "provided only sporadic and insufficient updates on the status" of the project. *Id.* ¶¶ 66-67. Casablanca alleges that such behavior, combined with Louth Callan's "breaches" and "failures" in the Jamaica Plain Project, "has, on information and belief, jeopardized the Daughters' willingness to enter into a lease" with Casablanca for the land needed for the Billerica Project. *Id.* ¶ 73. On April 9, 2025, Casablanca sent Louth Callan a demand letter requesting information to which it was entitled under the Billerica Agreement. *Id.* ¶¶ 74-75. The letter also stated that Louth Callan's failure to provide the requested information would constitute a "further breach" of the Billerica Agreement. *Id.* ¶ 76. Louth Callan did not respond to the letter "in any substantive way" or provide "any of the requested information." *Id.* ¶ 77. Accordingly, on May 12, 2025, Casablanca exercised its right to terminate the Billerica Agreement. *Id.* ¶ 78.

## III. <u>Procedural History.</u>

On September 26, 2025, Zebo and Casablanca brought suit against Louth Callan in Massachusetts Superior Court. ECF 1, ¶ 1; *see* ECF 1-1. The complaint asserts distinct claims for the Jamaica Plain Project and Billerica Project. With respect to the Jamaica Plain Project, Zebo

brings claims for breach of contract (Count I), intentional and negligent misrepresentation (Counts II and III), and violations of M.G.L. c. 93A (Count IV). ECF 1-1, ¶¶ 79-107. As to the Billerica Project, Casablanca brings claims for breach of contract (Count V), intentional and negligent misrepresentation (Counts VI and VII), and conversion (Count VIII). *Id.* ¶¶ 108-31. Louth Callan removed the case to this Court on October 10, 2025 based on diversity jurisdiction. ECF 1, ¶ 4; *see* ECF 19. It then moved to sever Casablanca's claims from Zebo's claims under Federal Rules of Civil Procedure 20 and 21. ECF 13. After receiving the plaintiffs' opposition, the Court held a hearing and took the motion under advisement. ECF 16, 20.

**DISCUSSION**

Federal Rule of Civil Procedure 21 provides that the Court "may at any time, on just terms, add or drop a party" and "sever any claim against a party." Fed. R. Civ. P. 21. Whether "to separate parties or claims is a case management determination peculiarly within the discretion of the trial court." *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 558 (1st Cir. 2003) (quotation marks omitted). But when "considering a motion to sever under Rule 21," the First Circuit has looked for guidance "to Rule 20, which provides the legal standard for permissive joinder." *Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc.*, 121 F.4th 228, 244 (1st Cir. 2024). That rule permits plaintiffs to join together in one action if (1) they "assert any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)-(B). If the parties satisfy those requirements, the court will also consider whether severance would facilitate judicial economy or settlement of the claims, whether severance would prejudice either party, and whether different witnesses and documentary proof are required for the various claims. *See Doyle v. Fed.*

*Express Corp. by FedEx Ground Package Sys., Inc.*, No. 24-cv-12030-DJC, 2026 WL 160647, at *10 (D. Mass. Jan. 21, 2026).

Louth Callan contends that severance is appropriate because the plaintiffs have failed to satisfy the dual requirements of Rule 20(a)(1). Beginning with the first, Louth Callan argues that the plaintiffs' claims do not arise out of the same transaction or occurrence. Although "[t]here is no bright-line rule in the First Circuit for determining what falls under the same transaction or occurrence for the purposes of permissive joinder," this Court has traditionally applied the "logical relationship test." *Id.* at *11 (quotation marks omitted). That test "requires only a 'logical relation' between the claims," which "exists when 'the same aggregate of operative facts serves as the basis of both claims.'" *Kress*, 121 F.4th at 245 (quoting *Iglesias v. Mutual Life Ins. Co. of New York*, 156 F.3d 237, 241-42 (1st Cir. 1998)). Put differently, while the "logical relationship" test "does not require that the exact same body of evidence be used to prove all claims for joinder to be proper," it is nevertheless not satisfied where the claims rest on "'entirely different' sets of facts with little to no overlap." *Id.* at 245-46 (quoting *Iglesias*, 156 F.3d at 241-42).

The plaintiffs assert that the Jamaica Plain Project and Billerica Project are "part of a related series of transactions in which [Zion] and others invested in multiple solar assets with Louth Callan over the span of one month . . . , two of which involve the Daughters." ECF 16, at 5. In other words, they argue, because both sets of claims functionally derive from contemporaneous transactions between the same parties—Louth Callan and Zion, the manager of both Zebo and Casablanca—a sufficient logical relationship exists to satisfy Rule 20(a). The Court is not convinced. The Jamaica Plain Project and Billerica Project are different solar investment projects, governed by different contracts, located at different sites in Massachusetts, operating at different stages of development, and involving different limited liability corporations with different

membership. The nature of the alleged contractual breaches and torts arising out of each project differs, too. Notwithstanding Zion's participation in both projects, the First Circuit has made clear that the fact that claims are "between the same parties" is insufficient where "there [is] no other connection between the claims." *Kress*, 121 F.4th at 246.

Such a connection exists, the plaintiffs respond, in the form of shared witnesses and documents. In their view, the same witnesses—Zion, witnesses from the Daughters, and witnesses from Louth Callan—will be needed to prove Zebo's claims and Casablanca's claims. The plaintiffs also suggest that they may wish to retain the same expert witnesses to opine on aspects of both projects and that some of the same documents will be used to prove both sets of claims. *See* ECF 17, at 7-10 (emails from Louth Callan to Zion containing discrete paragraphs on Jamaica Plain Project, Billerica Project, and third unrelated project). That argument, too, is unavailing, because some commonality in witnesses or documents does not justify joinder absent a shared "aggregate of operative facts." *Kress*, 121 F.4th at 245. And the plaintiffs do not identify any operative facts common to their claims. When pressed on this issue at the hearing, they argued that there *may* be overlap in the background facts concerning how Zion became involved with the Daughters and why he chose to invest in each project. But the complaint does not contain allegations supporting that speculation, and the plaintiffs make no argument otherwise linking the projects at their inception.

Zebo and Casablanca point out that one paragraph in their complaint appears to link the two projects. In that paragraph, they allege that "Louth Callan's multiple breaches" and its "installation, maintenance, warranty, and repair failures" in the Jamaica Plain Project have, "on information and belief, jeopardized the Daughters' willingness to enter into a lease with [Casablanca] for the Billerica Project." ECF 1-1, ¶ 73. This single paragraph—again, asserted on

information and belief—is a slender reed on which to rest a claim of a related transaction or occurrence, and it does not convince the Court that the plaintiffs' claims should remain joined. Should discovery reveal that Louth Callan's conduct in connection with the Jamaica Plain project affected the Daughters' decisionmaking with respect to the Billerica project, those facts and any potential effect on damages can be developed in connection with Casablanca's claims without undue prejudice to the parties.

Essentially, the plaintiffs' argument in favor of permissive joinder boils down to the fact that non-party Zion entered into one contract with Louth Callan on behalf of Zebo, and then, about a month later, a different contract with Louth Callan on behalf of Casablanca. The complaint, divided into two sections—one for allegations concerning the Jamaica Plain Project and one for those relating to the Billerica Project—puts forward distinct claims for each contract resting on "entirely different sets of facts with little to no overlap." *Kress*, 121 F.4th at 245 (quotation marks omitted). All that connects the parties' claims is that some of the same witnesses and documents may be required to prove them. That is not enough to demonstrate that the parties' claims arise out of the same transaction, occurrence, or series of transactions or occurrences. Accordingly, the requirements for permissive joinder have not been met, and severance of Casablanca's claims under Rule 21 is warranted.[2]

[2] Federal Rule of Civil Procedure 20(a) permits plaintiffs to join in one action if (1) their claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there exists "any question of law or fact common to all plaintiffs." Fed. R. Civ. P. 20(a)(1)(A)-(B). Although the Court resolves this motion based on the first requirement, Zebo and Casablanca have not met the second requirement either. The plaintiffs acknowledged at the hearing that there is no question of law common to their claims and, as explained, they have failed to identify any question of fact common to their claims.

**CONCLUSIONS AND ORDERS**

For the foregoing reasons, Louth Callan's motion to sever Casablanca and its claims—Counts V, VI, VII, and VIII—is GRANTED. Those claims will be re-docketed as a separate action before this session of the Court. The parties will receive a notification when that docket has been created. Within 21 days of this Order, Zebo is ORDERED to file an amended version of the complaint in this docket, striking Counts V, VI, VII, and VIII, and removing Casablanca as a party. Within 21 days of this Order, Casablanca is ORDERED to file an amended version of the complaint in the new docket, striking Counts I, II, III, and IV, and removing Zebo as a party. The Court regards both actions as having commenced upon the filing of the original complaint in this action, ECF 1-1, on September 26, 2025.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: August 20, 2026